**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION**

**KENNETH FLYNT**                                                                         **PLAINTIFF**

**v.**                                                    **CIVIL ACTION NO. 2:20-cv-180-TBM-MTP**

**JASPER COUNTY, MISSISSIPPI,
JASPER COUNTY SHERIFF'S
DEPARTMENT, SHERIFF RANDY
JOHNSON,** *and* **DEPUTY R.H. STOCKMAN**                               **DEFENDANTS**

<u>**MEMORANDUM OPINION AND ORDER**</u>

Kenneth Flynt was leaving a funeral in Jasper County when he was pulled over by Deputy Stockman for alleged traffic violations. Deputy Stockman asked to search Flynt's vehicle, but Flynt declined. Deputy Stockman then placed Flynt under arrest and searched his vehicle. Flynt was taken to jail and issued two tickets, which were ultimately dismissed. Flynt filed suit in this Court arguing that Deputy Stockman and Jasper County violated his constitutional rights and Mississippi state law. Now before the Court are three motions for judgment on the pleadings filed by Deputy Stockman and Jasper County. For the reasons discussed fully below, Deputy Stockman's Motion for Judgment on the Pleadings [23] based on qualified immunity is denied in part and granted in part; Deputy Stockman and Jasper County's Motion for Judgment on the Pleadings [25] as to Flynt's state law claims is denied; and Jasper County's Motion for Judgment on the Pleadings [27] as to *Monell* liability is granted.

**I. FACTUAL BACKGROUND**

This matter arises out of a July 8, 2019, traffic stop in Jasper County, Mississippi around 1:00 pm. Flynt had just left the funeral of retired Sheriff's Deputy Jimmy Dale Reynolds and was on his way to the Jasper County Courthouse to obtain absentee voting forms for his elderly mother

when he was stopped by Deputy Stockman for alleged "careless driving" and a "defaced tag."[1] Flynt denies that either of these traffic violations occurred.

After pulling him over, Deputy Stockman asked if Flynt was traveling with any large sums of money. Flynt told Deputy Stockman that he was not answering any questions or consenting to a search, but to write him a ticket if Deputy Stockman had a reason to stop him. Deputy Stockman then ordered Flynt out of his vehicle and requested permission to search the vehicle, which Flynt denied. Deputy Stockman placed Flynt under arrest. Flynt asserts that in effecting the arrest, Deputy Stockman "intentionally tightened the handcuffs on Mr. Flynt's wrists to the point where they were causing significant pain." [20], pg. 3. Flynt argues that Deputy Stockman arrested him not because of any careless driving or a defaced tag, but because Flynt exercised his constitutional right to decline Deputy Stockman's request to search his vehicle. Flynt alleges that there was "no probable cause for the search of Mr. Flynt's car prior to the arrest, and no probable cause for the arrest which ultimately led to the search." [20], pg. 7. During the search, Deputy Stockman seized two lawfully possessed firearms. No illegal contraband was found.

After Flynt was handcuffed and placed in the patrol car, Flynt advised Deputy Stockman that the handcuffs were too tight multiple times. Despite making Deputy Stockman aware that the handcuffs were causing him significant pain, Flynt claims that Deputy Stockman ignored him. Flynt asserts that he was then transported to jail and was processed. He was issued two tickets— one for "careless driving" and one for "defaced tag." Flynt asserts that neither is an arrestable offense, as they are punishable by fine only. After paying a twenty-five dollar, nonrefundable "turn

---

[1] All facts described in this section are taken as true from the allegations in Plaintiff's *Schultea* Reply. *See Arnold v. Williams*, 979 F.3d 262, 265 n.1 (5th Cir. 2020) (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1, 122 S. Ct. 992, 152 L. Ed. 2d 1 (2002)).

the key fee" in order to be released from jail, Flynt was required to pay two-hundred dollars to retrieve his vehicle, which had been towed. Flynt states that any charges for traffic violations against him were subsequently dismissed.

## II. PROCEDURAL HISTORY

In his Complaint, Flynt asserts claims arising under 42 U.S.C. § 1983 for alleged violations of his Second, Fourth, Fifth, Eighth, Thirteenth, and Fourteenth Amendment rights. Flynt also alleges a host of other state law claims. On December 3, 2020, Sheriff Randy Johnson and Deputy Stockman filed a Motion for Judgment on the Pleadings [11]. The Court granted the Motion [11] and required Flynt to file a *Schultea* reply and plead his alleged constitutional violations with more detail. The Court required Flynt's *Schultea* reply to be "tailored to the defense of qualified immunity," and that Flynt "support his claims 'with sufficient'" facts. [18], pg. 5 (citing *Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999); *Schultea v. Wood*, 47 F.3d 1427, 1430-32 (5th Cir. 1995)).

After Flynt filed his *Schultea* Reply [19], Sheriff Randy Johnson and Deputy Stockman filed a Motion [21] to Re-urge their Motion for Judgment on the Pleadings. The Court granted in part and denied in part Sheriff Randy Johnson and Deputy Stockman's Motion to Re-urge their Motion for Judgment on the Pleadings. *See* [22]. With consent of Plaintiff's counsel, the Court dismissed Sheriff Randy Johnson, in his individual capacity, without prejudice and dismissed Flynt's Fifth Amendment and Thirteenth Amendment claims without prejudice. *Id.* As a result of certain procedural anomalies, and because of the untimely death of Flynt's original attorney, the Defendants and Flynt were given another opportunity to re-brief the Defendants' motions.

Deputy Stockman filed his Renewed Motion for Judgment on the Pleadings [23] based on qualified immunity arguing that Flynt's *Schultea* Reply failed to plead facts establishing a

constitutional violation to overcome qualified immunity.[2] Deputy Stockman and Jasper County also filed a Motion for Judgment on the Pleadings [25] as to Flynt's state law claims arguing that Flynt's Notice of Claim [1-2] did not provide sufficient details as to the extent of his injuries in violation of the Mississippi Tort Claims Act pre-suit notice requirement. Finally, Jasper County filed a Motion for Judgment on the Pleadings [27] as to *Monell* liability arguing that Flynt failed to plead specific facts that would state a claim.

Flynt has since admitted that the official capacity claims against Sheriff Randy Johnson and Deputy Stockman should be dismissed as they are duplicative of the claims against Jasper County itself. [34], pg. 1. Flynt has also admitted that the Jasper County Sheriff's Department is not a proper party and should be dismissed. [33], pg. 3. Accordingly, Flynt's claims against Jasper County Sheriff's Department and the official capacity claims against Sheriff Randy Johnson and Deputy Stockman are dismissed.

### III. STANDARD OF REVIEW

"A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6)." *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). "Section 1983 claims implicating qualified immunity are subject to the same Rule 8 pleading standard set forth in *Twombly* and *Iqbal* as all other claims; an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (citation omitted). To avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.

---

[2] Deputy Stockman's Motion to Strike [42] Flynt's sur-reply [41] is granted pursuant to Local Rule 7(b)(4).

Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. It follows that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)). "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re S. Scrap Material Co.*, LLC, 541 F.3d 584, 587 (5th Cir. 2008) (citing *Twombly*, 550 U.S. at 556).

## IV. DEPUTY STOCKMAN'S MOTION [23] FOR
## JUDGMENT ON THE PLEADINGS BASED ON QUALIFIED IMMUNITY

"The question of qualified immunity must be addressed as a threshold issue because this issue determines a defendant's immunity from suit, that is, his or her ability to avoid a trial altogether, rather than merely his or her immunity from damages." *Mangieri v. Clifton*, 29 F.3d 1012, 1015 (5th Cir. 1994). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quotation omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231.

A law enforcement officer "is entitled to claim the cloak of qualified immunity 'unless it is shown that, at the time of the incident, he violated a clearly established constitutional right.'" *Mangieri v. Clifton*, 29 F.3d 1012, 1015 (5th Cir. 1994) (quotation omitted). As the Supreme Court has articulated, "[w]hen qualified immunity is asserted at the pleading stage, the precise factual basis for the plaintiff's claim or claims may be hard to identify," and deciding whether a violation has occurred "is an uncomfortable exercise where . . . the answer [to] whether there was a violation may depend on a kaleidoscope of facts not yet fully developed." *Pearson*, 555 U.S. at 238–39 (internal citations and quotation marks omitted). Thus, when confronted with a qualified-immunity defense at the pleadings stage, a plaintiff must plead "facts which, if proved, would defeat [the] claim of immunity." *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (quotation omitted).

Courts use a two-prong analysis to determine whether a defendant is entitled to qualified immunity. The Court must decide, assuming Flynt's facts are true, (1) whether he has alleged a violation of a constitutional right and, if so, (2) whether the right was clearly established. *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). The Court may answer these questions in either order, but if both steps are satisfied, qualified immunity does not apply. *Pearson*, 555 U.S. at 242.

## A. Fourth Amendment unlawful search and seizure claim

Flynt asserts that his Fourth Amendment right against unlawful search and seizure was violated when Deputy Stockman initiated a traffic stop and subsequently arrested him and searched his vehicle without his consent. Flynt's arguments are simple: (1) because Deputy Stockman lacked probable cause to initiate the traffic stop, there was no probable cause for the arrest or for the search of his vehicle; (2) the charges for careless driving and defaced tag were

ultimately dismissed, further supporting his assertion that there was no probable cause; and (3) Deputy Stockman made no mention of arresting Flynt for careless driving or defaced tag until Flynt refused to let Deputy Stockman search his vehicle.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. "Stopping a vehicle and detaining its occupants constitutes a 'seizure' within the meaning of the Fourth Amendment." *Atwood v. Tullos*, 312 F. Supp. 3d 553, 560 (S.D. Miss. 2018) (citing *Brendlin v. California*, 551 U.S. 249, 255–56, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007)). An arrest is also a seizure under the Fourth Amendment. *Mangieri v. Clifton*, 29 F.3d 1012, 1016 (5th Cir. 1994). The Court will first address the traffic stop and will then address the arrest and the search together. Under each analysis, the Court must first determine whether Flynt's allegations, if true, are sufficient to allege a violation of a constitutional right. If a constitutional violation is alleged, the Court will then determine whether the right was clearly established. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Saucier*, 533 U.S. at 202.

### i. Traffic stop

Flynt argues that Deputy Stockman lacked probable cause to initiate the traffic stop in violation of the Fourth Amendment. The Fifth Circuit analyzes "routine traffic stops, whether justified by probable cause or a reasonable suspicion of a violation" under the standard announced

in *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).[3] *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (citations omitted). Under *Terry*, courts "determine the reasonableness of an investigative stop by examining: (1) whether the officer's action of stopping the vehicle was justified at its inception, and (2) whether the officer's actions were reasonably related in scope to the circumstances that justified the stop." *United States v. Rosales-Giron*, 592 F. App'x 246, 250 (5th Cir. 2014) (citations omitted).

For a traffic stop to be justified at its inception, "an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). It is well-settled that an officer's "mere hunch" will not suffice. *Terry*, 392 U.S. at 27. Courts have found that reasonable suspicion exists when the officer can "point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the seizure]." *United States v. Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005). "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 116 S. Ct. 1769, 135 L. Ed. 2d 89 (1996); *United States v. Rosales-Giron*, 592 F. App'x 246, 251 (5th Cir. 2014) (citation omitted). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *United States v. Zavala*, 541 F.3d 562, 575 (5th Cir. 2008) (quoting *United States v. Castro*, 166 F.3d 728,

---

[3] The Fifth Circuit has explained that "[b]ecause an officer's reasonable suspicion that a traffic violation occurred requires the same objective basis as probable cause for a traffic stop, i.e., that a traffic law was actually violated, [courts] need not undertake a separate analysis." *United States v. Raney*, 633 F.3d 385, 392 n.2 (5th Cir. 2011).

733 (5th Cir. 1999) (en banc)). Courts determine the validity of a traffic stop by examining "the totality of the circumstances—the whole picture." *United States v. Chavez*, 281 F.3d 479, 485 (5th Cir. 2002) (quoting *United States v. Sokolow*, 490 U.S. 1, 7–8, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989)).

Here, Deputy Stockman allegedly pulled Flynt over on the basis that he was driving carelessly and because of a defaced tag. Flynt has repeatedly alleged that there was no probable cause for the initial stop or the issuance of the tickets. [20], pp. 5, 8. In other words, Flynt submits in his Response "that he was not driving carelessly and that there was nothing wrong with his tag at the time of the stop." [31], pg. 7. Because the citations issued by Deputy Stockman were ultimately dismissed, Flynt asserts there was no basis for the initial stop. 20], pp. 1, 8.

Deputy Stockman argues that Flynt's allegations are "devoid of specific[s] . . . that would allow the Court to 'infer more than the mere possibility of misconduct.'" [38], pg. 4 (quoting *Iqbal*, 556 U.S. at 679). According to Deputy Stockman, Flynt could have met his burden by alleging that "Deputy Stockman lacked probable cause to pull Plaintiff over (a) for careless driving because Plaintiff was not speeding or swerving when pulled over; or even (b) for defaced tag/improper equipment because Plaintiff's license plate was clearly visible and was not covered or obstructed in any way." *Id*. Essentially, Deputy Stockman argues that had Flynt alleged just five more descriptive phrases in his *Schultea* Reply, such as: not speeding, not swerving, license plate was clearly visible, not covered, not obstructed—he would have met his burden at this stage. Deputy Stockman asserts that because Flynt "did not state anything remotely similar," however, he is entitled to qualified immunity.

While Flynt's facts as alleged certainly do not "conclusively establish" his theory of the case, that is not Flynt's burden at the pleadings stage. Instead, all that is required of Flynt at this

stage is to plead "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re Southern Scrap Material Co., LLC*, 541 F.3d at 587 (citing *Twombly*, 550 U.S. at 556); *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 329  n. 18 (5th Cir. 2020) ("At the pleading stage, the plaintiff must allege facts that demonstrate unlawful conduct; at the judgment stage, the plaintiff must show proof of such facts."). Despite Deputy Stockman's argument, the five descriptive phrases identified would not provide any additional insight into the evidence that Flynt hopes to reveal in discovery. Indeed, the five phrases merely expound on what Flynt has already alleged: that Deputy Stockman had no basis to initiate the traffic stop or issue the citations because Flynt was not driving carelessly and there was nothing wrong with his tag at the time of the stop.

It is well-settled in the Fifth Circuit that unless a traffic violation was actually committed, "there is no 'objective basis' for the stop, and the stop is illegal." *United States v. Escalante*, 239 F.3d 678, 681 (5th Cir. 2001) (citation omitted); *United States v. Lopez–Valdez*, 178 F.3d 282, 288 (5th Cir. 1999)); *United States v. Raney*, 633 F.3d 385, 392 n.2 (5th Cir. 2011). Therefore, accepting Flynt's allegations as true, Deputy Stockman initiated the traffic stop without reasonable suspicion

or probable cause,[4] which violated a clearly established right. *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *Sorenson v. Ferrie*, 134 F.3d 325, 328 (5th Cir. 1998); *Attwood v. Tullos*, 312 F. Supp. 3d 553, 561 (S.D. Miss. Apr. 24, 2018) (citing *Brendlin v. California*, 551 U.S. 249, 255–56, 127 S. Ct. 2400, 168 L. Ed. 2d 132 (2007)) ("For the purposes of the qualified immunity analysis, it was clearly established at the time of the incident that a traffic stop must be predicated on reasonable suspicion."). Because Flynt alleges a violation of a clearly established constitutional right, Deputy Stockman is not entitled to qualified immunity on this claim.

**ii. Arrest and search**

Flynt argues that because Deputy Stockman had no probable cause to pull him over for careless driving or defaced tag, then Deputy Stockman necessarily arrested him and searched his vehicle without probable cause. [20], pg. 5. A warrantless arrest must be based on probable cause. *Webb v. Arbuckle*, 456 F. App'x 374, 384 (5th Cir. 2011). Probable cause exists "when the totality of the facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996); *Mangieri v. Clifton*, 29 F.3d

---

[4] *See Haywood v. City of El Paso, Texas*, No. EP-20-cv-114-KC, 2021 WL 5072029, at *8 (W.D. Tex. Oct. 26, 2021) (citing *Alexander v. City of Round Rock*, 854 F.3d 298, 305 (5th Cir. 2017) (finding that the plaintiff stated a claim for unlawful detention when officers stopped and removed him from his vehicle without reasonable suspicion that he had committed or was about to commit a crime)); *Torres v. Ball*, No. 1:19-cv-94-FDW, 2019 WL 4491522, at *2-3 (W.D. N.C. Sep. 18, 2019) (finding plaintiff alleged a plausible claim for a Fourth Amendment unlawful search and seizure claim where officer pulled the plaintiff over without probable cause and subsequently searched the plaintiff's pockets); *Cunningham v. Felix*, No. 3:16-cv-2120-G-BK, 2017 WL 1194468, at *4 (N.D. Tex. Mar. 9, 2017) (finding that the plaintiff alleged sufficient facts showing "the traffic stop was not justified at its inception and that the troopers lacked reasonable suspicion to justify Plaintiff's detention."); *Garcia v. Harris Cnty.*, No. CV H-16-2134-GHM, 2017 WL 2405330, at *7 (S.D. Tex. Jun. 2, 2017) ("Accepting the fact that Garcia did not violate any traffic laws as true, the officers had no reasonable suspicion to perform the traffic stop, and consequently, any subsequent search or seizure would be a violation of Garcia's rights."); *Webb v. Jordan*, No. 13-1121-TS, 2013 WL 4784104, at *2 (W.D. La. Sep. 5, 2013) (finding the plaintiff pled sufficient facts to overcome the qualified immunity defense at the pleadings stage by alleging that the plaintiff "was not breaking any traffic laws, nor had she been drinking, when she was pulled over and therefore Officer Jordan has no objective reason to detain her.").

1012, 1016 (5th Cir. 1994); *Glenn v. City of Tyler*, 242 F.3d 307, 313 (5th Cir. 2001). In determining the existence of probable cause, courts must consider objective indicators present at the time, not the officer's subjective beliefs about the circumstances or subjective determination that probable cause did or did not exist. *United States v. Lopez–Moreno*, 420 F.3d 420, 432 (5th Cir. 2005) ("Supreme Court and Fifth Circuit precedent has made clear that an officer's subjective intentions have no impact on analyzing reasonable suspicion or probable cause because they are both considered to be based on an objective test."); *United States v. Steele*, 353 F. App'x 908, 910 (5th Cir. 2009). Where there was no probable cause for the arrest, both the arrest and any subsequent search of the vehicle violate the Fourth Amendment. *See Escalante*, 239 F.3d at 681 (citing *United States v. Miller*, 146 F.3d 274, 279 (5th Cir. 1998)); *Raney*, 633 F.3d at 393–94; *Garcia*, 2017 WL 2405330, at *7.

Here, Flynt alleges that (1) because there was no probable cause to initiate the traffic stop, Deputy Stockman had no probable cause to arrest Flynt or search his vehicle; (2) the charges for careless driving and defaced tag were ultimately dismissed, further supporting his assertion that there was no probable cause; and (3) Deputy Stockman made no mention of arresting Flynt for careless driving or defaced tag until Flynt refused consent to search his vehicle. Although Deputy Stockman argues that Flynt has failed to meet his burden based on the allegations contained within his Complaint and *Schultea* Reply, he demands too much at the pleadings stage. It is well settled that allegations need "not conclusively establish" Flynt's theory of the case. *Doe v. Robertson*, 751 F.3d 383, 389 (5th Cir. 2014). Indeed, all that is required of him at this stage is to plead "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements." *In re Southern Scrap Material Co., LLC*, 541 F.3d at 587 (citing *Twombly*, 550 U.S. at 556). Assuming Flynt's allegations are true, as this Court must at the pleadings stage, Flynt was

not driving carelessly and did not have a defaced tag at the time of the traffic stop. And apart from Deputy Stockman's alleged subjective belief that probable cause existed, which is insufficient to establish probable cause, there are no facts in the record that Flynt was in fact driving carelessly or with a defaced tag.

While Flynt's allegations are simple, and may not satisfy the burden in every case, Flynt has alleged facts that Deputy Stockman arrested Flynt and searched his vehicle without probable cause, which was a violation of a clearly established right at the time of the traffic stop. *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968); *Raney*, 633 F.3d at 393–94; *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 206 (5th Cir. 2009). Accordingly, the Court finds that Flynt's allegations sufficiently state a cause of action allowing for more discovery to fully develop the record. *See Hobbs v. Warren*, 838 F. App'x 881, 883 (5th Cir. 2021). Flynt's Fourth Amendment unlawful arrest claim will proceed.

## B. Fourth Amendment excessive force claim

Flynt asserts that Deputy Stockman used excessive force during the arrest when he intentionally tightened Flynt's handcuffs to the point of causing significant pain and permanent nerve damage. To overcome Deputy Stockman's qualified immunity defense, Flynt must first plead facts to support a constitutional violation. *Trammell v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017) (quoting *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001)). If a constitutional violation is alleged, the Court must then determine whether the right was clearly established.

The Fourth Amendment creates a "right to be free from excessive force during a seizure." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). To demonstrate excessive force during an arrest, a plaintiff must prove "that [he] suffered (1) an injury that (2) resulted directly and only

from the use of force that was excessive to the need and that (3) the force used was objectively unreasonable." *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004) (citing *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)). "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009). In making this determination, the Court considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Poole*, 691 F.3d at 627–28 (quoting *Graham v. Connor*, 490 U.S. 386, 396, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)). The Court may also consider "extent of [the] injury inflicted" to determine whether an officer's force was excessive. *Deville*, 567 F.3d at 168 (citing *Whitley v. Albers*, 475 U.S. 312, 321, 106 S. Ct. 1078, 89 L. Ed. 2d 251 (1986)). The overarching question is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham*, 490 U.S. at 397.

"It is well-settled in the Fifth Circuit that 'handcuffing too tightly, without more, does not amount to excessive force.'" *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001); *Templeton v. Jarmillo*, 28 F.4th 618, 622 (5th Cir. 2022) (collecting cases). Indeed, the Fifth Circuit has held that to establish a claim for excessive force, a "plaintiff must demonstrate an injury that, while not necessarily significant, is more than *de minimis*." *Walcotte v. Wicks*, No. C-08-323-BLO, 2009 WL 1373601, at *3 (S.D. Tex. May 15, 2009) (citing *Tarver v. City of Edna*, 410 F.3d 745, 752 (5th Cir. 2005)). The Fifth Circuit has found handcuff injuries to be more than *de minimis* where the injuries suffered resulted in long-term damage or permanent injury. *Deville*, 567 F.3d 156 (finding plaintiff stated a claim where the handcuffing resulted in long-term nerve damage requiring four surgeries); *Dominguez v. Moore*, 149 F. App'x 281 (5th Cir. 2005) (finding plaintiff stated a claim where the

14

handcuffs cut into his skin and resulted in permanent scarring and nerve injury); *Heitschmidt v. City of Houston*, 161 F.3d 834 (5th Cir. 1998) (finding plaintiff stated a claim where handcuffs caused serious and permanent injury to his wrists and required medical treatment).

Flynt asserts that Deputy Stockman tightened Flynt's handcuffs to the point of causing significant pain and permanent nerve damage. In his *Schultea* Reply, Flynt alleges that following his release from jail, he sought medical treatment for the pain in his wrists. [20], pg. 3. According to Flynt, he was diagnosed with "radial nerve" damage and required physical therapy to treat the injury. *Id*. Flynt argues that despite medical treatment, he has a permanent impairment to his right hand as a result of the excessive force used against him by Deputy Stockman. *Id*. Considering the factors outlined in *Graham*, the Court finds that Flynt has alleged more than a *de minimis* injury by offering facts in support of long-term damage as a result of being handcuffed too tightly.

Having found Flynt that alleged more than a *de minimis* injury, the Court must now determine whether the officer's use of force was objectively reasonable in light of Fourth Amendment standards. *Buehler v. Dear*, 27 F.4th 969, 981 (5th Cir. 2022) (citation omitted). "To 'gaug[e] the objective reasonableness of the force used by a law enforcement officer, we must balance the amount of force used against the need for force.' This balancing test 'requires careful attention to the facts and circumstances of each particular case.'" *Lincoln v. Turner*, 874 F.3d 833, 847 (5th Cir. 2017) (citing *Flores v. City of Palacios*, 381 F.3d 391 (5th Cir. 2004)).

Flynt asserts that upon informing Deputy Stockman that the handcuffs were too tight, Deputy Stockman did not inspect or loosen the cuffs. In fact, Flynt submits that Deputy Stockman only replied, "they ain't made for comfort." Flynt was not arrested for a violent crime and, in his Response, he explains that he "compl[ied] with Deputy Stockman's every command, aside from not assenting to a search of his private property." [31], pg. 10. Bearing in mind that at the pleadings

15

stage, Flynt need only plead "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements," the Court finds that Flynt has alleged facts showing that Deputy Stockman's use of force was objectively unreasonable in light of Fourth Amendment standards. *In re Southern Scrap Material Co., LLC*, 541 F.3d at 587 (citing *Twombly*, 550 U.S. at 556); *Deville*, 567 F.3d at 169. Finally, it was clearly established at the time of the incident that tightening handcuffs to the point of causing permanent or serve injury could amount to excessive force. *Buesing v. Honeycutt*, No. A-16-CA-286-SS, 2016 WL 1688788, at *4 (W.D. Tex. Apr. 25, 2016) (citing *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (quoting *Hope v. Pelzer*, 536 U.S. 730, 740, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002)) (finding the central purpose of the "clearly established" inquiry is to determine whether "prior decisions gave reasonable warning that the conduct at issue violates constitutional rights."). Because the Court cannot conclude that Deputy Stockman's conduct was objectively reasonable in light of clearly established law, Flynt's excessive force claim will proceed.

## C. Claims waived

The Court finds that Flynt has waived his Second Amendment claim, Fourth Amendment malicious prosecution claim, and Eighth Amendment claim—as well as his Fourteenth Amendment claim which Flynt incorporated into these claims—because he did not respond to Deputy Stockman's Motion for Judgment on the Pleadings as to these alleged constitutional violations. *See Friend v. City of Greenwood, Mississippi*, No. 4:19-cv-SA, 2020 WL 2306112, at *7 (N.D. Miss. May 5, 2020) (citing *United States v. Reagan*, 596 F.3d 251, 254 (5th Cir. 2010)); *Stearman v. Comm'r*, 436 F.3d 533, 537 (5th Cir. 2006). Deputy Stockman's Motion for Judgment on the Pleadings as to these claims is granted.

**D. Fourteenth Amendment due process claim**

As discussed fully above, Flynt stated a Fourth Amendment claim for unlawful search and seizure and excessive force. Accordingly, Flynt has "failed to state a claim for a violation of procedural and substantive due process because resort to a generalized remedy under the Due Process Clause is inappropriate where a more specific constitutional provision provides the rights at issue." *Arnold v. Williams*, 979 F.3d 262, 270 (5th Cir. 2020) (citing *Albright v. Oliver*, 510 U.S. 266, 273, 114 S. Ct. 807, 127 L. Ed. 2d 114 (1994)). "In those situations, the specific provision, 'not the more generalized notion of substantive due process,' better guides analysis of a plaintiff's claims." *Arnold*, 979 F.3d at 270 (quoting *Graham v. Connor*, 490 U.S. 386, 395, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989) (internal quotations omitted)). For these reasons, Flynt's Fourteenth Amendment claims are dismissed.

## V. DEPUTY STOCKMAN AND JASPER COUNTY'S MOTION [25] FOR JUDGMENT ON THE PLEADINGS AS TO STATE LAW CLAIMS

Flynt asserts state law claims for negligence; fraud, malice/conspiracy and extortion; failure to adequately train and supervise police officers; negligent hiring, retention, and failure to discipline or take necessary corrective action; civil conspiracy; outrage; and negligent infliction of emotional distress against Deputy Stockman and Jasper County arising out of the traffic stop and the subsequent arrest and search of his vehicle.[5] The parties agree that Flynt's various state law claims arise under, and are subject to, the Mississippi Tort Claims Act. Deputy Stockman and Jasper County argue that Flynt's Notice of Claim failed to comply with the Mississippi Tort Claims Act pre-suit notice requirements and that his claims should be dismissed. Specifically, Deputy

---

[5] Flynt agrees to the dismissal of his state law claims for fraud, malice/conspiracy, extortion, and negligent training and supervision. [33], pp. 7-8.

Stockman and Jasper County argue that Flynt failed to provide sufficient information as to the extent of his injuries in his Notice of Claim.

## A. Notice of claim requirements under the Mississippi Tort Claims Act

It is well-established that the Eleventh Amendment bars "an individual from suing a state in federal court unless the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002) (citations omitted). The Eleventh Amendment also bars state law claims in federal court. *McGarry v. Univ. of Mississippi Med. Ctr.*, 355 F. App'x 853, 856 (5th Cir. 2009) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 120–21, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984)). The scope of this immunity "extends to any state agency or entity deemed an alter ego or arm of the state." *Perez*, 307 F.3d at 326 (internal quotation marks omitted).

The Mississippi Tort Claims Act ("MTCA") is the State's only explicit waiver of sovereign immunity and preserves the State's Eleventh Amendment immunity. *Delaney v. Mississippi Dep't of Pub. Safety*, No. 3:12-cv-229-TSL, 2013 WL 286365, at *3 (S.D. Miss. Jan. 24, 2013). Mississippi's limited waiver of sovereign immunity through the MTCA is subject to numerous conditions, exceptions, and limitations. For example, the statute provides that every notice of claim shall contain:

> a short and plain statement of facts upon which the claim is based, including (1) the circumstances which brought about the injury, (2) the extent of the injury, (3) the time and place the injury occurred, (4) the names of all persons known to be involved, (5) the amount of money damages sought and (6) the residence of the person making the claim at the time of the injury and at the time of filing the notice.

MISS. CODE ANN. § 11-46-11(2). Mississippi courts have held that the purpose of the MTCA's pre-suit notice requirement is to make sure "that governmental [entities] . . . are informed of claims

against them." *O'Hara v. City of Hattiesburg*, 222 So. 3d 314, 317 (Miss. Ct. App. 2017), reh'g denied (July 25, 2017) (quoting *Reaves ex rel. Rouse v. Randall*, 729 So. 2d 1237, 1240 (Miss. 1998)).

Substantial compliance, rather than strict compliance, applies to the contents of notice of claim letters. *Price v. Clark*, 21 So. 3d 509, 520 (Miss. 2009) (citations omitted); *see also Lane v. Mississippi Dep't of Transportation, S. Dist.*, 220 So. 3d 254, 256 (Miss. Ct. App. 2017) (quoting *Fairley v. George Cnty.*, 871 So. 2d 713, 716 (Miss. 2004)). "The determination of substantial compliance is a legal, though fact-sensitive, question." *Lane*, 220 So. 3d at 256 (quoting *Fairley*, 871 So. 2d at 716). "Although 'substantial compliance' is a more lenient standard than 'strict compliance,' it is not synonymous with no compliance at all." *Prater v. Wilkinson Cnty., Miss.*, No. 5:13-cv-23-DCB, 2013 WL 5946377, at *3 (S.D. Miss. Nov. 5, 2013) (citation omitted).

The Mississippi Supreme Court has held that "the notice need not disclose every single fact, figure and detail, but rather the substantial details." *S. Cent. Reg'l Med. Ctr. v. Guffy*, 930 So. 2d 1252, 1258 (Miss. 2006). Indeed, "where some information in each of the [statutorily] required categories is provided, [courts] must determine whether the information is 'substantial' enough to be in compliance with the statute." *Guffy*, 930 So. 2d at 1258. If so, the plaintiff has provided proper notice under the MTCA pre-suit notice provision. *Id.*; *Burnett v. Hinds Cnty. by & Through Bd. of Supervisors*, 313 So. 3d 471, 478 (Miss. 2020). Where a plaintiff fails to provide information in "*any* of the . . . statutorily required categories," however, the Mississippi Supreme Court has held the notice of claim is not in compliance with Section 11-46-11 and subject to dismissal for failure to comply with the mandatory requirements. *Guffy*, 930 So. 2d at 1258.

**B. Whether Flynt substantially complied with Section 11-46-11**

Deputy Stockman and Jasper County argue that Flynt failed to substantially comply with Section 11-46-11 by not providing information in his Notice of Claim as to the extent of his injuries.[6] Notably, Deputy Stockman and Jasper County do not argue that Flynt failed to provide information as to *any* of the statutorily required categories. Instead, they only argue that Flynt failed to provide sufficient information as to the extent of his injuries. Accordingly, the question before the Court is whether Flynt provided substantial enough information as to the extent of his injuries in his Notice of Claim to be in compliance with Section 11-46-11. The Court finds that he has.

Here, Flynt alleges at least five state law claims against Deputy Stockman and Jasper County and Flynt's Notice of Claim includes a "Damages Incurred" section which provides that "Mr. Flynt has suffered bodily injury including permanent future impairment. Medical bills. Emotional distress." [1-2], pg. 2. Flynt's Notice of Claim also states that he "seeks damages in an amount of $500,000.00." *Id.*

While Deputy Stockman and Jasper County rely on a Mississippi Court of Appeals case, *Lane v. Mississippi Department of Transportation, Southern District*, the Court finds it to be distinguishable. In *Lane*, the plaintiff lost control of his motorcycle after hitting a damaged portion of the road and brought a single negligence claim under the MTCA arguing that the Mississippi Department of Transportation failed to properly inspect and maintain the road. The plaintiff's notice of claim provided information as to four of the statutorily required categories, but not all of them. *Lane v. Mississippi Dep't of Transportation, S. Dist.*, 220 So. 3d 254, 260 (Miss. Ct. App. 2017). Specifically, the plaintiff's notice did not include the extent of injury or his address at the

---

[6] Deputy Stockman and Jasper County do not argue that the Plaintiff failed to strictly comply with the ninety-day statutory notice provision in Section 11-46-11(1).

time of the injury or at the time of the claim. *Lane*, 220 So. 3d at 260. The Mississippi Court of Appeals found the notice was not in compliance with Section 11-46-11 because it "provided no description of his alleged injuries or their extent, disclosing only the types of damages he claimed." *Id*. at 257. The court found that "[h]is notice stated only that he 'ha[d] suffered and continue[d] to suffer damages in excess of $28,983.53, in personal and property damages,' and unspecified 'pain and suffering' damages." *Lane*, 220 So. 3d at 258. Without more information, "MDOT was informed only that someone named Harry Lane was making a claim against it based on a motorcycle wreck that occurred one year earlier." *Id*. at 260.

Here, taking the facts as true, Flynt has alleged multiple state law claims arising out of an unlawful traffic stop where he was arrested for traffic violations he did not commit and was subject to an unlawful search of his vehicle. And unlike the plaintiff in *Lane*, Flynt provided information for all the statutorily required categories. Here, the only issue is whether he provided *sufficient* information as to one category: the extent of injury. While the plaintiff in *Lane* merely provided "unspecified pain and suffering damages," in Flynt's Notice of Claim, he provides notice that he suffered bodily injury—including permanent future impairment—medical bills, emotional distress, and money damages in the amount of $500,000. [1-2], pg. 2. Additionally, Flynt submits the full extent of his injuries were not known at the time he sent his Notice of Claim because "[t]he extent of his injuries is a moving target, with some days better than others." [33], pg. 7.

Although the Defendants focus on Flynt's knowledge of the extent of his wrist injury at the time his Notice of Claim was sent, not all of Flynt's state law claims may be related to that injury. In fact, some of Flynt's state law claims may be related to emotional distress. Additionally, at this stage in the proceedings, there has been no discovery—and it is unclear what injuries Flynt was aware of at the time the Notice of Claim was sent, the extent of his injuries, what treatment he

received for his wrist injury and when he received such treatment, whether he received any treatment for emotional distress, and if so, when and to what extent. The Court finds that the dismissal of all of Flynt's state law claims because the Defendants argue that he did not provide sufficient information—not any information—as to one injury out of the multiple injuries alleged, would be, in this Court's view, holding Flynt to a standard of strict compliance rather than the required standard of substantial compliance.

Because Flynt provided the Defendants sufficient notice that he suffered bodily injury and emotional distress, the Court finds that Flynt's Notice of Claim is in compliance with Section 11-46-11. *See Mahoney v. City of Jackson*, No. 3:07-cv-137-DPJ, 2008 WL 2990906, at *10 (S.D. Miss. Jul. 25, 2008); *see also Fairley*, 871 So. 2d at 718 (holding that a plaintiff is only "required to reveal the extent of injuries known at the time the notice letter is sent" because "the full extent of [a plaintiff's] injuries may only become known at a later date."). Consequently, the dismissal of all of Flynt's state law claims at this stage in the proceedings would be premature. For these reasons, Deputy Stockman and Jasper County's Motion for Judgment on the Pleadings is denied, without prejudice, as to Flynt's state law claims.

## C. Negligent infliction of emotional distress

Deputy Stockman and Jasper County seek dismissal of Flynt's negligent infliction of emotional distress claim, arguing that it is barred by the Police Function exemption of the MTCA. The MTCA exempts a governmental entity and its employees acting within the course and scope of their employment from liability related to law enforcement activities, unless "the employee acted in reckless disregard for the safety and well-being of any person not engaged in criminal activity at the time of the injury." MISS. CODE ANN. § 11-46-9(1)(c). "Reckless disregard . . . denotes more than negligence, but less than an intentional act." *Barnett v. City of Laurel*, No. 2:18-

cv-92-KS, 2019 WL 5865774, at *5 (S.D. Miss. Nov. 8, 2019) (quoting *City of Jackson v. Lewis*, 153 So. 3d 689, 693 (Miss. 1989) (internal quotations omitted)). The Mississippi Supreme Court has found "reckless disregard when the conduct involved evinced not only some appreciation of the unreasonable risk involved, but also a deliberate disregard of that risk and the high probability of harm involved." *Id*. The reckless disregard standard "embraces willful or wanton conduct which requires knowingly and intentionally doing a thing or wrongful act." *Phillips v. Miss. Dep't of Pub. Safety*, 978 So. 2d 656, 661 (Miss. 2008).

In his *Schultea* Reply, Flynt alleges that Deputy Stockman "intentionally tightened the handcuffs on Mr. Flynt's wrists to the point where they were causing significant pain." [20], pg. 3. Flynt further asserts that after he was handcuffed and placed in the patrol car, Flynt advised Deputy Stockman that the handcuffs were too tight multiple times, but Deputy Stockman ignored him. In other pleadings before this Court, Flynt also asserts that despite making Deputy Stockman aware that the handcuffs were causing him significant pain, Deputy Stockman replied, "they ain't made for comfort." [30], pg. 2. In his Response, Flynt argues that Deputy Stockman "[i]gnoring [his] cries for help is textbook conscious indifference." [33], pg. 8. Flynt further argues that even if ignoring his pleas for help "is not enough for conscious indifference, surely Stockman's flippant 'they ain't made for comfort' remark is." *Id*.

Although the Defendants argue that Flynt fails to demonstrate that Deputy Stockman acted with reckless disregard to Flynt's safety and well-being, the Court disagrees. Based on the facts alleged, Flynt has plausibly stated a claim for negligent infliction of emotional distress. While Flynt's negligent infliction of emotional distress claim may fail at summary judgment, at this stage, the Court finds that Flynt has met his burden. Therefore, Deputy Stockman and Jasper County's

Motion for Judgment on the Pleadings as to Flynt's negligent infliction of emotional distress claim is dismissed without prejudice.

## VI. JASPER COUNTY'S MOTION [27] FOR JUDGMENT ON THE PLEADINGS AS TO *MONELL* LIABILITY

In his Complaint and *Schultea* Reply, Flynt asserts various Section 1983 claims against Jasper County. In his Response, however, Flynt addresses only his allegations against Jasper County for operating an unconstitutional fee-collection scheme and for failure to adequately hire, train, and supervise its deputies. Accordingly, the Court finds that Flynt waived his Second Amendment claim, Fourth Amendment excessive force claim, Fourth Amendment search and seizure claims, Fourth Amendment malicious prosecution claim, and Fourteenth Amendment claims. *See Friend*, 2020 WL 2306112, at *7 (citing *Reagan*, 596 F.3d at 254). The Court will first address Flynt's Eighth Amendment fee-collection claim and will then turn to his claim for failure to adequately hire, train and supervise.

### A. Eighth Amendment fee-collection claim

"As is well established, every *Monell* claim requires an underlying constitutional violation." *Hicks-Fields v. Harris Cnty., Texas*, 860 F.3d 803, 808 (5th Cir. 2017) (internal quotations and citation omitted). Indeed, a county can be held liable under Section 1983 only if the actions taken pursuant to an official policy caused a constitutional tort. *Clark v. Thompson*, 850 F. App'x 203, 207 (5th Cir. 2021) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)). To succeed on a *Monell* claim against a county, a plaintiff must allege facts "show[ing] that (1) an official policy (2) promulgated by the [county] policymaker (3) was the moving force behind the violation of a constitutional right." *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (quotation omitted). Notably, liability may attach where the

constitutional deprivation is pursuant to a governmental custom, even if such custom has not received formal approval. *Monell*, 436 U.S. at 690-91. "To proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Peña*, 879 F.3d at 622 (quotation omitted).

Flynt asserts that Jasper County maintains an official policy of charging every person arrested for a crime a nonrefundable "turn the key fee" of $25.00 in order to be released from jail, "regardless of whether the arrest was made upon warrant or not." [20], pg. 10. Flynt argues that such a fee is "a taking and is violative of the 8th" Amendment. *Id*. In his Response, Flynt argues that "it is unconstitutional for Jasper County to charge a 'bond fee' in order to secure release upon bond. Such a procedure improperly forfeits a criminal defendant's money to the government in violation of the Eighth Amendment and is not authorized by statute." [36], pg. 2. With regard to the Mississippi statute, Flynt argues bond fees "are not to be collected prior to release from custody, but are to be collected by the clerk of court when the defendant appears in court for final adjudication or at the time the defendant posts cash bond," pursuant to Mississippi Code § 83-39-31. [36], pg. 2. Finally, Flynt asserts that Section 83-39-31 provides that the fees will not be imposed if the defendant is acquitted. *Id*.

The Eighth Amendment states that "excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII. The Eighth Amendment's Excessive Fines Clause is incorporated by the Due Process Clause of the Fourteenth Amendment and therefore, applies to the states. *Timbs v. Indiana*, --- U.S. ---, 139 S. Ct. 682, 689, 203 L. Ed. 2d 11 (2019). However, "'the State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of

guilt in accordance with due process of law.'" *Broussard v. Par. of Orleans*, 318 F.3d 644, 652 (5th Cir. 2003) (quoting *Ingraham v. Wright*, 430 U.S. 651, 671 n.40, 97 S. Ct. 1401, 51 L. Ed. 2d 711 (1977)). "Therefore, allegations of punishment before adjudication of guilt must be addressed under the Due Process Clause of the Fourteenth Amendment." *Broussard*, 318 F.3d at 652 (citing *Ingraham*, 430 U.S. at 671 n.40).

Here, the $25.00 fee was imposed prior to Flynt's adjudication of guilt. Accordingly, the Excessive Fines Clause is not the appropriate provision under which to test the allegedly nonrefundable "turn the key fee." *Broussard*, 318 F.3d at 652. Instead, it would be proper for the Court to determine whether the fee constitutes a violation of the Fourteenth Amendment Due Process Clause. *Id.* (collecting cases). Because Flynt failed to address his Fourteenth Amendment claim in his Response [36] to Jasper County's Motion for Judgment on the Pleadings as to *Monell* liability, however, his Fourteenth Amendment claim is waived. *Nichols v. Enterasys Networks, Inc.*, 495 F.3d 185, 190 (5th Cir. 2007). Because Flynt's Eighth Amendment claim is inapposite, it is dismissed with prejudice.

## B. Failure to adequately hire, train, and supervise deputies

To establish municipal liability under Section 1983, a plaintiff must prove three elements: "1) a policymaker; 2) an official policy; and 3) a violation of constitutional rights whose moving force is the policy or custom.*" Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001). The failure to train, supervise, or discipline an employee may constitute a "policy," but only when it "reflects a 'deliberate' or 'conscious' choice by a municipality." *City of Canton v. Harris*, 489 U.S. 378, 389, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). To prevail on a claim that a municipality is liable for failing to train, supervise, or discipline an employee, "a plaintiff must plead facts plausibly establishing (1) that the [county's] training, supervisory, or disciplinary policies or practices were

inadequate, (2) that the municipality was deliberately indifferent in adopting this deficient policy, and (3) that the inadequate training, supervisory, or disciplinary policy directly caused the violations in question." *Ratliff v. Aransas Cnty., Texas*, 948 F.3d 281, 285 (5th Cir. 2020).

The Supreme Court instructed in *Iqbal* that "[d]etermining whether a complaint states a plausible claim for relief is context-specific, requiring the reviewing court to draw on its experience and common sense." *Iqbal*, 556 U.S. at 663-64. "In the context of municipal liability, as opposed to individual officer liability, it is exceedingly rare that a plaintiff will have access to (or personal knowledge of) specific details regarding the existence or absence of internal policies or training procedures prior to discovery." *Thomas v. City of Galveston, Texas*, 800 F. Supp. 2d 826, 842–43 (S.D. Tex. 2011) (collecting cases). Additionally, "municipalities do not enjoy immunity from suit—either absolute or qualified—under Section 1983" and the concerns of protecting public servants from the "concerns of litigation, including avoidance of disruptive discovery," are not present in suits against municipalities. *Leatherman v. Tarrant Cnty. Narcotics Intel. & Coordination Unit*, 507 U.S. 163, 113 S. Ct. 1160, 122 L. Ed. 2d 517 (1993); *Iqbal*, 556 U.S. at 685. Accordingly, a plaintiff's allegations at the pleadings stage "need not specifically state what the policy is, as the plaintiff will generally not have access to it, but may be more general." *Thomas*, 800 F. Supp. 2d at 843 (citing *Hobart v. City of Stafford*, No. 4:09-cv-3332-KPE, 2010 WL 3894112, at *5 (S.D. Tex. Sep. 29, 2010) ("even general facts which point to prior violations by SPD would allow the Hobarts to survive the motion to dismiss phase."); *In re Southern Scrap Material Co., LLC*, 541 F.3d at 587 (quoting *Twombly*, 550 U.S. at 556) (at the pleadings stage, a plaintiff need only allege "'enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary claims or elements.").

27

Although minimal factual allegations are permissible at this stage, "a plaintiff suing a municipality must provide fair notice to the defendant, and this requires more than [generically] restating the elements of municipal liability." *Thomas*, 800 F. Supp. 2d at 843; *Hankins v. Wheeler*, No. CV 21-1129, 2022 WL 2208848, at *7 (E.D. La. Jun. 21, 2022). "Allegations that provide such notice could include, but are not limited to, past incidents of misconduct to others, multiple harms that occurred to the plaintiff himself, misconduct that occurred in the open, the involvement of multiple officials in the misconduct, or the specific topic of the challenged policy or training inadequacy." *Thomas*, 800 F. Supp. 2d at 843. Such details, "or any other minimal elaboration a plaintiff can provide," help to "satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." *Id.* (quoting *Twombly*, 550 U.S. at 555 n. 3). Such allegations also "permit the court to infer more than the mere possibility of misconduct." *Id.* (quoting *Iqbal*, 129 S.Ct. at 1950).

Here, Flynt alleges that Jasper County "failed to adequately supervise, train, or discipline their employees, though it was foreseeable that constitutional violations and harm of the type caused in Mr. Flynt's case would be the likely result of such failures." [20], ¶¶ 9, 16, 24, 31. Flynt also argues that Deputy Stockman was "deliberately acting in accordance with a pattern, practice, or custom that was created, encouraged, directed, promoted, accepted, condoned, or permitted by codefendant Jasper County" in violation of the Fourth and Eighth Amendments. [20], pp. 3, 5, 7, 8, 10.

The Supreme Court has held that "[o]nly where a failure to train reflects a 'deliberate' or 'conscious' choice by a municipality—a "policy" as defined by our prior cases—can a city be liable for such a failure under § 1983." *City of Canton*, 489 U.S. at 389. The Supreme Court explained that this rule is most consistent with its admonition in *Monell* "that a municipality can be liable

under § 1983 only where its policies are the 'moving force [behind] the constitutional violation.'"
*Id.* Because a municipality's liability for failure to train, supervise, or discipline an employee falls
under the traditional Section 1983 elements for establishing municipal liability, the Court analyzes
each below.

As an initial matter, the Court finds that Flynt's claim fails the "policymaker" prong. The
Fifth Circuit has held that a municipality cannot be liable for an unwritten policy or custom unless
"[a]ctual or constructive knowledge" of such policy or custom is attributable to a policymaker.
*Pena v. City of Rio Grande City*, 879 F.3d 613, 662 (5th Cir. 2018). But Flynt's *Schultea* Reply
"invites no more than speculation that any particular policymaker" knew about the alleged policy.
*Pena*, 879 F.3d at 623.

But even if Flynt's claim succeeded on the first prong, the Court nevertheless finds that
Flynt has not pled facts allowing the Court to infer that Jasper County's failure to adequately hire,
train, and supervise its Deputies would lead to the deprivation of the Fourth Amendment rights
alleged by Flynt—specifically, initiating a traffic stop without reasonable suspicion and an arrest
and subsequent search without probable cause. *See e.g., Ybarra v. Davis*, 489 F. Supp. 3d 624 (W.D.
Tex. 2020). Indeed, "[i]t is not enough to say that more or different training or supervision would
have prevented" the alleged violation. *Elliott v. El Paso Cnty. Sheriff's Dep't*, No. EP-19-cv-25-
PRM, 2019 WL 527521, at *4 (W.D. Tex. Feb. 11, 2019) (quoting *Estate of Davis ex rel. McCully v.
City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005)). Otherwise, "[i]n virtually every
instance where a person has had his or her constitutional rights violated by a city employee, a §
1983 plaintiff [would] be able to point to something the city 'could have done[.]'" *Elliott*, 2019 WL
527521 at *4 (quoting *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392, 109 S. Ct. 1197, 103 L. Ed.
2d 412 (1989)); *see also Roberts v. City of Shreveport*, 397 F.3d 287, 293 (5th Cir. 2005) ("Mere proof

29

that the injury could have been prevented if the officer had received better or additional training cannot, without more, support liability.") (citation omitted).

Flynt's claim also fails to allege deliberate indifference. To satisfy the deliberate indifference prong, a plaintiff "must allege a 'pattern of similar constitutional violations by untrained employees.'" *Hutcheson v. Dallas Cnty., Texas*, 994 F.3d 447, 482 (5th Cir. 2021) (citing *Connick v. Thompson*, 563 U.S. 51, 62, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011)). To plausibly "plead a practice 'so persistent and widespread as to practically have the force of law,' [Flynt] must do more than describe the incident that gave rise to his injury." *Pena*, 879 F.3d at 662 (citation omitted). Here, Flynt merely alleges that "it is certainly reasonable to presume that this is not the first time these deputies or other members of the Jasper County Sheriff's Department have behaved in a manner violative of a person's civil rights." [36], pg. 4. But this allegation does not contain any facts. Instead, Flynt only provides facts as to the events that gave rise to this action. *See Pena*, 879 F.3d at 622; *see also Ratliff*, 948 F.3d at 258. Absent facts showing a "pattern of similar constitutional violations by untrained employees," Flynt's allegations fail to provide facts from which the Court can draw a causal connection between any failure to train and the alleged constitutional violations. *Hutcheson v. Dallas Cnty., Texas*, 994 F.3d 447, 482 (5th Cir. 2021); *Garcia v. Harris County*, No. H-22-198, 2022 WL 2230469 (S.D. Tex. Jun. 2, 2022); *Washington v. Jones*, --- F. Supp. 3d ---, (W.D. La. Feb. 15, 2022); *Est. of Causey v. Miles*, No. 3:15-cv-00914-N, 2015 WL 13742550, at *8 (N.D. Tex. Nov. 19, 2015).

Because Flynt's allegations do not "permit the court to infer more than the mere possibility of misconduct," Flynt's failure to adequately hire, train, and supervise claim is dismissed. *Thomas*, 800 F. Supp. 2d at 843.

**VII. CONCLUSION**

IT IS THEREFORE ORDERED AND ADJUDGED that Deputy Stockman's Motion for Judgment on the Pleadings [23] as to qualified immunity is DENIED in part and GRANTED in part. The Motion [23] is DENIED as to Flynt's Fourth Amendment search and seizure claims and Fourth Amendment excessive force claim and GRANTED as to Flynt's Fourth Amendment malicious prosecution claim, Second Amendment claim, Eighth Amendment excessive fine claim, and Fourteenth Amendment claims.

IT IS FURTHER ORDERED AND ADJUDGED that Deputy Stockman's Motion to Strike [42] is GRANTED.

IT IS FURTHER ORDERED AND ADJUDGED that Deputy Stockman and Jasper County's Motion for Judgment on the Pleadings [25] as to Flynt's state law claims is DENIED.

IT IS FURTHER ORDERED AND ADJUDGED that Jasper County's Motion for Judgment on the Pleadings [27] as to *Monell* liability is GRANTED.

IT IS FURTHER ORDERED AND ADJUDGED that Flynt's claims against Jasper County Sheriff's Department and the official capacity claims against Sheriff Randy Johnson and Deputy Stockman are dismissed.

This, the 30th day of September, 2022.

TAYLOR B. McNEEL
UNITED STATES DISTRICT JUDGE